Jeffery GORMAN and Darlene
Gorman, Appellants,

v.

CITY OF HAINES, a municipal corpora-
tion and the State of Alaska, Depart-
ment of Community & Regional Af-
fairs, Appellees.

No. 6622.

Supreme Court of Alaska.

Jan. 6, 1984.

James E. Douglas, Baxter & Douglas Law Offices, Juneau, for appellants.

Michael M. Holmes, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellees.

## OPINION

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SOUTER, Judge.[*]

SOUTER, Judge.

### FACTS AND PROCEEDINGS

On February 10, 1978, Jeffery Gorman was hired by the Haines police department under the federal Comprehensive Employment and Training Act (CETA) 29 U.S.C. §§ 801–999 (repealed 1982). As a CETA employee Gorman was classified as a temporary employee and was ineligible for benefits under the Alaska Public Employees Retirement System (PERS). Toward the end of April, 1978, he was offered a permanent, non-CETA position on the Haines police force by the city mayor, Gail Wallace, but he informed her that he could not accept at that time because of a previous commitment to work elsewhere for the summer. Thereafter, Gorman took an unpaid leave of absence and returned to work as a Haines patrolman on July 5, 1978.

In December of 1978, Haines Police Chief Fain requested that Gorman fill out a CETA form. This was the first reference to CETA since Gorman had rejoined the force in July. Disturbed by the implications of this request, Gorman met with the mayor to clarify his status as a permanent or temporary employee and the extent of his employment benefits. It is disputed as to precisely what assurances were made by the mayor at this meeting.

On February 10, 1979, Gorman was seriously injured while attempting to make an arrest. As a result, he was permanently disabled, and he collected worker's compensation, after signing a "Compromise and Release" on which he had added wording to the effect that he was not surrendering his right to bring suit on any claim arising out of the incident resulting in his injury.

■ On April 16, 1980, Gorman instituted the instant action, seeking relief on three distinct counts. Count I asserts tort claims by Gorman and his wife against the City of Haines and the State of Alaska for failing to provide him with proper training and supervision and a safe place to work. Count II is a claim for damages by Gorman under the theory that he was a third party beneficiary of the safety provisions of the contract between the city and state.[1] Count III is a claim by Gorman to recover from the city the disability retirement benefits he would have received from the state had he been eligible for PERS,[2] on the ground that the city is equitably estopped from denying that it is liable to him for these benefits because the city, through its mayor, assured him before the accident that he was entitled to receive the same benefits as regular city employees.

On August 11, 1981, the trial court granted the city's motion for summary judgment on all three counts and certified it as final under Civil Rule 54(b). The Gormans have appealed, contending that there are material issues of fact in dispute with respect to each count in the complaint.

### A. *The Tort and Contract Claims* (Counts I & II)

Appellants recognize that the exclusive remedy section of the Workers' Compensa-

---

[*] Souter, Superior Court Judge sitting by assignment made pursuant to Article IV, Section 16, of the Constitution of Alaska.

1. The relevant provision of the contract states:
   k. Appropriate standards for health and safety in work and training situations will be maintained (section 703(5)).

2. Gorman could not maintain this claim against the state itself, because the city cannot by its actions bind the state. *See, Kenai Peninsula Borough v. State,* 532 P.2d 1019, 1023, 1026 (Alaska 1975).

tion Act, AS 23.30.055,[3] would bar their tort and contract claims unless these claims fit within an exception to the statute. The exception which appellants contend to be applicable is that of an express waiver by an employer of its right to assert the statutory bar. We find it unnecessary, however, to decide whether such an exception exists, for we conclude that it would be inapplicable under the undisputed facts in this case.

■ The factual basis for appellants' waiver argument is the addendum which Gorman placed on the Compromise and Release before he and the workers' compensation insurance carrier's representative signed it. That addendum reads as follows:

> This agreement is for the release of workmen's compensation benefits alone, and does not compromise or release any other claims which the employee may have now or in the future for damages resulting from the injuries resulting from the work related injuries referred to here within, whether against any person or legal entity, corporation or municipality for and acts taken or failed to be taken also no release or compromise on a pension possibly due from this incident [sic].

Appellants argue that the acceptance of the addendum by the insurance carrier's representative constituted an express waiver by the city of its exclusive remedy defense. We disagree. Even assuming, without deciding, that the city would be bound by a waiver to which its insurance carrier assented, it is clear that no waiver of the city's right to assert the statutory bar was effected by the addendum. It is clear that the addendum merely *reserved* whatever rights Gorman had at the time he signed the Compromise and Release. At the time he signed the Compromise and

Release he had no right to collect tort or contract damages from the city on account of his injuries, because of the bar effected by AS 23.30.055. Therefore, the addendum could not, and did not, reserve any such rights to him or his wife. Further, the addendum clearly did not purport to deprive the city of any of its rights, nor did it purport to create any new rights for Gorman's benefit. It therefore did not constitute a waiver by the city of its right to assert the statutory bar.

Since the city is clearly entitled to assert the exclusive remedy defense of AS 23.30.-055, it follows that the trial court's award of summary judgment in the city's favor on Counts I and II was correct.

### B. *The Disability Retirement Benefits Claim* (Count III)

On his equitable estoppel claim against the city to recover disability retirement benefits, Gorman claims to have developed a triable question of fact on the issue of what assurances were given by the city leading him to believe he was eligible for PERS disability retirement benefits.[4] During Gorman's discussion of his employment status with Mayor Wallace in December of 1978, he claims to have been told that he would receive all of the same benefits as regular employees, but "would have to work one additional year in order to retire with full benefits." It is the city's position that no such representation was made. Mayor Wallace recalls advising him "that he would have to work one year longer before he could *enter* the retirement program." However, the Mayor also testified that "after I spoke to my City Administrator on the phone, I relayed the same information to Jeff, which stated at that time that, yes, he was eligible for all city benefits, except that he would have to work one more year towards the retirement program."

---

**3.** AS 23.30.055 provides in relevant part that the liability of an insured employer to an employee for injury or death sustained while working "is exclusive and in place of all other liability of the employer and any fellow employee to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and any-

one otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death."

**4.** *See, Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978) for the elements of an equitable estoppel claim.

The city claims that even Gorman's version of the facts is inadequate to raise material issues of fact, because his testimony is not inconsistent with that given by the city's witnesses. Indeed, the witnesses do agree that there was to be some difference between Gorman's treatment and that of regular employees with respect to pension qualification. And no one claims that disability retirement benefits in particular were discussed. But there is evidence that statements were made to Gorman by the Mayor which were ambiguous regarding Gorman's PERS entitlement. Such evidence may at trial establish no more than the existence of a misunderstanding between the parties, but it is possible that the ambiguities could be resolved in Gorman's favor by the trier of fact. Therefore, the city failed to meet its burden of showing the absence of any genuine issues of material fact. *See Champion Oil Co., Inc. v. Herbert,* 578 P.2d 961, 963 (Alaska 1978); *Alaska Rent-a-Car, Inc. v. Ford Motor Company,* 526 P.2d 1136, 1138 (Alaska 1974). Consequently, the trial court's order granting summary judgment on Count III was erroneous.[5]

AFFIRMED in part, REVERSED in part and REMANDED for trial on Count III.

5. Implicit in this holding is our rejection of the city's argument that the alleged assurances of its mayor would have been *ultra vires* for the city. Clearly, the city had the power to include disability pension benefits in the compensation provided to its employees. AS 29.48.010(2).