2011 OK CIV APP 68

**Nancy K. DEHART, Plaintiff/Appellant,**

**v.**

**INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, Oklahoma, a/k/a Tulsa Public Schools, Defendant/Appellee.**

No. 107,964.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 18, 2011.

Certiorari Denied May 19, 2011.

Maynard I. Ungerman, Tulsa, Oklahoma, and Jeff A. Lee and Richard B. Wilkinson, Oklahoma City, Oklahoma, for Appellant.

J. Douglas Mann and Jerry A. Richardson, Tulsa, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant, Nancy DeHart, seeks review of the trial court's order granting the summary judgment motion of Defendant, Tulsa Public Schools, on Plaintiff's claims against Defendant for breach of contract, violation of the Teacher Due Process Act of 1990 and violation of Plaintiff's due process rights under the 5th and 14th Amendments of the United States Constitution.

¶ 2 Plaintiff, Nancy DeHart, was first employed with Tulsa Public Schools (TPS or school district) in 1993. She taught in the TPS system for two years, until the conclusion of the 1994–1995 school year. She then left TPS employment for ten years and returned as an administrative employee in May 2005. Then for the 2005–2006 school year, DeHart was employed on a one-year temporary teaching contract at Thoreau Demonstration Academy. This temporary contract expired at the end of the 2005–2006 school year. During the Summer of 2006, DeHart was hired on another temporary contract for the 2006–2007 school year, this time teaching at Mitchell Elementary. This second temporary contract expired at the end of the 2006–2007 school year. On July 25, 2007, DeHart signed another temporary contract, but the July contract contained a termination date of January 10, 2008, indicating it was a one semester contract. DeHart specifically provided her initials on the contract next to the January 10, 2008 termination date.

¶ 3 Prior to the signing of the temporary contract on July 25, 2007, DeHart asserts she

had signed a different contract for the 2007–2008 school year in May 2007, two months before being asked to sign the other contract on July 25, 2007. Neither party produced a copy of the May 2007 instrument. The school board approved the July 25, 2007 instrument as a one semester contract.

¶ 4 In January 2008, DeHart inquired of her principal regarding the possible expiration of her teaching contract on January 10, 2008. In the course of this dialogue, the principal asked DeHart for a letter of resignation, which DeHart did not provide. DeHart's employment with TPS then terminated on January 10, 2008.

¶ 5 DeHart filed her petition against TPS on February 28, 2008, alleging breach of contract, violation of 70 O.S. 6–101.23(F), (G) and (H), and violation of her due process rights. She filed a partial motion for summary judgment asserting that the conduct of TPS resulted in a continuing contract with TPS. TPS argued DeHart was simply employed on three separate temporary contracts. Specifically, DeHart complained: 1) TPS placed her on five semesters of temporary contracts in violation of § 6–101.23(F); 2) TPS failed to provide full written disclosures in violation of § 6–101.23(G); 3) TPS's attempts to employ her on a temporary contract in 2005, when she returned to TPS after a ten year absence, violated § 6–101.23(H); 4) and TPS was estopped from denying the May 2007 contract that DeHart claims was for the entire year and then improperly required her to subsequently sign a temporary contract for a single semester. DeHart asserts the result of TPS's mishandling of her contracts meant she was actually conferred continuing, career teacher, status by virtue of the operation of the statute, § 6–101.23. DeHart then claims she was wrongfully denied the due process protections available to career teachers.

¶ 6 After a November 18, 2009 hearing on Defendant's motion for summary judgment and Plaintiff's partial motion for summary judgment, the trial court determined DeHart was employed on three separate temporary contracts for a total of five semesters. The court found that § 6–101.23(F) prohibited a school district from placing a teacher on a temporary contract for more than three consecutive semesters with no break in service. However, the court also determined that the three semester provision was not a lifetime limit, meaning the number of temporary contracts between a teacher and school district was not limited to a total of three semesters over the lifetime of the professional teaching relationship. The trial court also determined no estoppel theory could lie against the school district and that each of the temporary contracts DeHart had with TPS included a written disclosure which met the requirements of 70 O.S. § 6–101.23(G). In its December 29, 2009 order, the court then granted Defendant's motion for summary judgment and denied DeHart's partial motion for summary judgment. Having reviewed the record, we affirm the order of the trial court.

¶ 7 In TPS's motion for summary judgment, the school district argued DeHart's previous employment with TPS from 1993 to 1995 did not confer upon her any career teacher status when she returned to TPS ten years later. She was given three distinct temporary contracts, two for the length of the school year and one single semester contract. TPS claims the five semesters under temporary contract did not violate § 6–101.23(F), because there was a distinct break in service after each contract. TPS also noted each contract was clearly labeled a "Temporary Teacher Contract" for which DeHart would have no expectation of continuing contract status. TPS further argued that DeHart's estoppel position was untenable because the school principal with whom DeHart says she signed the alleged, May 2007, one year contract was not in a position to promise DeHart one year of employment without the approval of the school board. The school board approved the one semester contract. TPS argued the notice provided DeHart in each of her contracts was sufficient to satisfy the full written disclosure requirements under § 6–101.23(G). TPS finally asserted that DeHart had no career teaching status and was therefore not entitled to the due process protections conferred upon career teachers who enjoyed continuing

contracts, by virtue of the application of § 6–101.23(A)(3) or the U.S. Constitution.

¶ 8 On appeal, DeHart urges the trial court erred in holding that 70 O.S.2001 § 6–101.23(F) does not prohibit TPS from hiring a teacher on a temporary contract basis for more than three semesters. DeHart also complains she was not provided a full written disclosure at the time her temporary contracts were offered, as required under 70 O.S.2001 § 6–101.23(G). DeHart alleges the school district's conduct created a regular continuing contract of employment. DeHart then alleges the court erred in not requiring TPS to abide by the provisions of the Teacher Due Process Act of 1990, which would require DeHart receive proper notice and a right to be heard prior to termination of employment. And finally, DeHart alleges violation of her rights under state and federal due process provisions.

¶ 9 This court reviews the lower court's granting of summary judgment by a *de novo* standard, because the lower court decision turns on a purely legal determination. *Cranford v. Bartlett,* 2001 OK 47, 25 P.3d 918, 919–20. *"De novo* review is a plenary, independent and non-deferential re-examination of the trial court's ruling." *Id.* at 920. "Like a trial court, an appellate court examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact and, as in the trial court, all inferences and conclusions arising from the evidentiary materials are viewed in a light most favorable to the non-moving party." *Id.* (citation omitted).

■ ¶ 10 The central issue in this appeal is whether DeHart was employed under valid temporary contracts or whether the conduct of TPS was such that these contracts became a contract for continuing employment. Key to this analysis is whether the three temporary contracts, spanning five semesters under which DeHart served TPS as a classroom teacher, violated the provisions of 70 O.S. 2001 § 6–101.23(F).[1] Subsection F states "[n]o teacher shall be hired on a temporary contract by a school district for more than

three semesters[.]" TPS argues this provision means that a single temporary teacher contract, with no break in service, cannot exceed three semesters in length. DeHart argues the provision means a teacher cannot be perpetually employed under temporary contracts and the school district can only utilize this temporary tool for a total of three semesters and that her five semesters of temporary employment violated the statute, resulting in a continuing contract.

¶ 11 The fundamental rule of statutory construction is to give effect to the legislature's intent and that intent is first sought in the language of the statute itself. *Fanning v. Brown,* 2004 OK 7, 85 P.3d 841, 845–46. The court will give the words of the statute their plain and ordinary meaning, unless it is clear a different meaning was intended. *Id.* at 846. In this case the Oklahoma Legislature used the words "[n]o teacher shall be hired on a temporary contract by a school district for more than three semesters[.]" The use of the words "a temporary contract" appear by their plain and ordinary meaning to indicate a limitation on the duration of a single temporary contract. Subsection F does not speak to consecutive temporary contracts or indicate a teacher cannot be temporarily employed on multiple temporary contracts. We find no error in the district court's determination that § 6–101.23(F) prohibits a school district from placing a teacher on a temporary contract for a period in excess of three semesters, and that the three temporary contracts under which DeHart served did not violate this provision, none being in excess of three semesters.

¶ 12 The second issue addressed in TPS's motion for summary judgment is DeHart's estoppel claim. DeHart asserts that in May 2007 she signed a full year contract for the 2007–2008 school year. There is some evidence in the record indicating DeHart signed some agreement with the school principal in May 2007, but upon this record it is not clear what were the parameters of that agreement. This document is not part of the record in these proceedings and was never submitted

---

1. Subsection F was amended in 2010 to provide as follows: "No teacher shall be hired on a temporary contract by a school district for more than four semesters[.]" At the time of DeHart's employment and termination, the statute limited the temporary contract to three semesters.

to the school board for approval. Instead, DeHart signed another contract in July 2007 and the July 2007 contract was approved by the school board.[2]

■ ¶13 Estoppel will not normally lie against a governmental entity such as TPS. *Bd. of Educ. of Indep. School Dist. No. 48, Hughes County v. Rives,* 1974 OK 153, 531 P.2d 335, 337. However, an exception which might allow an estoppel claim against a public entity exists when the party asserting the claim can establish a violation of public policy. *Strong v. State, ex rel. Oklahoma Police Pension and Retirement Board,* 2005 OK 45, ¶9, 115 P.3d 889, 893–94; *Burdick v. Indep. School Dist. No. 52 of Oklahoma County,* 1985 OK 49, 702 P.2d 48, 53. The governmental shield against estoppel is formidable. A "stronger, more compelling policy or interest must be advanced before estoppel may be invoked against either the state or a public agency." *Strong,* 115 P.3d at 894. DeHart fails to articulate a violation of public policy in her motion for summary judgment, except to indicate that it was improper to break the promise of employment that she believed had been made by the principal. In later responsive pleadings, DeHart indicates public policy

demands school districts not be permitted to circumvent the Teacher Due Process Act of 1990 by maintaining teachers on temporary status indefinitely.[3]

¶14 Neither of these rationales is compelling enough to meet the violation of public policy standard that is required to lift the bar to an estoppel claim against the state, especially in light of the fact a statute already exists to prevent school districts from prolonging a teacher's temporary status indefinitely. DeHart's argument is also less compelling because the principal, who allegedly made the promise of one year employment, was without authority to make the promise to DeHart absent the approval of the school board. *School District No. 39, Pottawatomie Co. v. Shelton,* 1910 OK 155, 109 P. 67. "Persons dealing with public officials are charged with notice of the limitations on [that public official's] power[;]" this includes DeHart understanding that the principal cannot bind the school district to a teaching contract. *Strong,* 115 P.3d at 894.

¶15 DeHart's public policy argument is further undermined by the fact that the agreement DeHart wants to enforce by operation of estoppel is not part of this record.

2. DeHart argues the July 25, 2007 contract is ambiguous because it contains language indicating it was a full year contract, but also contains language demonstrating it was a one semester contract. Paragraph 1 of the contract reads, "School District desires to employ Temporary Teacher to provide temporary teaching services in School District's schools for the *1st semester* of the 2007–2008 school year *ending January 10th, 2008."* (Emphasis in original). DeHart provided her initials at this paragraph.

3. It should be noted title 70 already addresses this issue of maintaining teachers in temporary status for indefinite periods of time under the career teacher definition provided in § 6–101.3(4):
4. "Career teacher" means a teacher who:
a. for teachers employed by a school district during the 2011–12 school year, has completed three (3) or more consecutive complete school years as a teacher in one school district under a written continuing or temporary teaching contract, or
b. for teachers employed for the first time by a school district under a written continuing or temporary teaching contract on or after July 1, 2012:
(1) has completed three (3) consecutive complete school years as a teacher in one school district

under a written continuing or temporary teaching contract and has achieved a rating of "superior" as measured pursuant to the Oklahoma Teacher and Leader Effectiveness Evaluation System (TLE) as set forth in Section 6 of this act for at least two (2) of the three (3) school years, with no rating below "effective",
(2) has completed four (4) consecutive complete school years as a teacher in one school district under a written continuing or temporary teaching contract, has averaged a rating of at least "effective" as measured pursuant to the TLE for the four-year period, and has received a rating of at least "effective" for the last two (2) years of the four-year period, or
(3) has completed four (4) or more consecutive complete school years in one school district under a written continuing or temporary teaching contract and has not met the requirements of subparagraph a or b of this paragraph, only if the principal of the school at which the teacher is employed submits a petition to the superintendent of the school district requesting that the teacher be granted career status, the superintendent agrees with the petition, and the school district board of education approves the petition. The principal shall specify in the petition the underlying facts supporting the granting of career status to the teacher[.]

DeHart admitted in deposition testimony that she did not recall reading the May 2007 contract, nor, according to her deposition testimony, did DeHart actually know whether the contract was a continuing contract or temporary contract. However, she said she assumed the May 2007 instrument was a continuing contract.

¶ 16 In any event, even if the terms of the May 2007 agreement were a part of this record, the subsequent July 2007 contract, covering the same terms of the earlier missing instrument, effectively supersede and rescind the earlier contract, "leaving the later agreement as the only agreement of the parties on the subject." *Rose v. Roberts,* 1945 OK 229, 161 P.2d 851, 853. For these reasons, we can find no error as alleged which would demand enforcement of the May 2007 instrument.

■ ¶ 17 DeHart also alleges TPS failed to provide full written disclosure at the time the positions were offered, in violation of 70 O.S.2001 § 6–101.23(G).[4] DeHart alleges she was not provided information regarding her duties, pay or fringe benefits and that she should have received a document separate and apart from the contract itself in order to satisfy subsection G. The school district asserts the contract itself provided the required full written disclosure and the pay, duty and fringe benefit issues are addressed specifically in paragraphs 2(b), (c) and (d) of

each temporary contract DeHart signed.[5] Each of DeHart's temporary contracts also provided in all capital letters and bold typeface, "this contract satisfies the statutory requirement for full written disclosure[.]" And each of the temporary contracts indicated it was "temporary" in nature with an underlined, all capital letters, heading entitled "Temporary Teacher Contract," as well as references to the "temporary" nature of the contract throughout the document itself.

¶ 18 We can find nothing in the language of § 6–101.23(G) which demands the full written disclosure be included in a document separate from the contract itself, as DeHart claims. The contract, which includes references to duties, fringe benefits, compensation, the temporary nature of the employment itself, as well as an acknowledgment that the contract itself satisfies the full disclosure requirement of subsection G, satisfies the statutory requirements. We find no error in the trial court's determination that the written disclosure requirements of § 6–101.23(G) were met in this case.

¶ 19 In DeHart's initial pleadings and partial motion for summary judgment, she attempted to attach significance to her 1993 to 1995 teaching position with TPS, arguing that "[w]hen rehired in 2005 pursuant to [70 O.S.2001 § 6–101.23] Plaintiff was required to be hired as a certified teacher on a continuing contract." [¶ 12 of Plaintiff's Petition]. It appears from her later pleadings that De-

---

4. 70 O.S.2001 § 6–101.23(G) provides:

G. No teacher shall be offered a temporary contract with a school district without a full written disclosure at the time a position is offered by the administration of the school district which sets forth the terms and conditions of the temporary contract. In the event the school district fails to provide such written disclosure, the teacher shall be considered as employed on a continuing contract basis.

5. The temporary contracts provided as follows with regard to pay, duties and fringe benefits:

2) Temporary Teacher desired to accept employment by School District as a temporary teacher under the terms of this contract.
NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained and intending to be legally bound, the School District and Temporary Teacher agree as follows:
a) *Employment of Temporary Teacher.* School District employs Temporary Teacher to perform

teaching services in School District's schools under the terms of this contract. Temporary Teacher accepts employment with School District in that capacity.
b) *Duties.* Temporary Teacher agrees that Temporary Teacher is familiar with the duties he/she is to assumes as a temporary teacher in School District's school system and agrees to perform those duties as assigned from time to time to Temporary Teacher which may include co-curricular and extracurricular assignments.
c) *Compensation.* For all teaching services performed under this contract, School District agrees to pay Temporary Teacher at regular payroll periods, according to the salary schedule adopted by the School District's Board of Education for the fiscal year of School District in which Temporary Teacher renders services.
d) *Fringe Benefits.* During the term of this contract, School District agrees that Temporary Teacher is entitled to participate in any "fringe benefit" programs offered to other teachers by School District for this fiscal year only.

Hart may have abandoned this position. The trial court's order states "[i]t is undisputed Ms. DeHart's prior employment did not confer upon her career teacher status."

¶ 20 DeHart initially relied upon § 6–101.23(H) in support of this position, claiming she was employed on a continuing contract when she left TPS in 1995 and application of subsection H required that she never again be subject to temporary employment.[6] Subsection H states that a teacher who "is employed on a continuing contract basis" shall not be reemployed on a temporary contract. The use of "is employed" appears by its plain and ordinary meaning to denote a currently employed teacher, serving under a continuing contract. DeHart was not currently employed on a continuing contract when she received her temporary contract in 2005. DeHart's argument would demand an interpretation that any teacher who had ever been employed under a continuing contract could never be given a temporary contract. The statute does not support such an interpretation. The trial court's decision that DeHart's previous employment did not confer career teacher status will remain undisturbed.

¶ 21 Finally, DeHart's claim to due process protections of the Teacher Due Process Act of 1990, as well as due process under the 5th and 14th amendments of the U.S. Constitution, arise only if there has been a violation of Plaintiff's due process rights in continued public employment and if her property interest has been adversely affected. However, having found DeHart was employed under a valid temporary contract, there is no basis for her due process claims under the Teacher Due Process Act or the Constitution. Teachers working under temporary contracts are not afforded the due process protections of career teachers. *Scheer v. Indep. School Dist. No. I–26 of Ottawa Co.*, 1997 OK 115, 948 P.2d 275, 278–79. DeHart was employed to the conclusion of her last contract with TPS, until January 10, 2008. Consequently, we find there was no violation as alleged and no due process protection was denied her in this case.

6. 70 O.S.2001 § 6–101.23(H):
   H. On and after the effective date of this act no teacher who is employed on a continuing contract basis by a school district shall be reemployed on a temporary contract in that school district.

¶ 22 We AFFIRM the decision of the trial court granting the Defendant's, Tulsa Public Schools, motion for summary judgment. AFFIRMED.

MITCHELL, P.J., and BUETTNER, J., concur.